In re Richard R. SYLVESTER;
Irene L. Sylvester, Debtors.

Richard R. SYLVESTER, Appellant,

v.

Herbert HAFIF, Esq.; United States
Trustee; Howard M. Ehrenberg,
Chapter 7 Trustee, Appellees.

BAP No. CC–97–1225–JPaMe.
Bankruptcy No. LA96–42750 KM.
Adversary No. LA96–04009 KM.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued Jan. 21, 1998.

Submitted Feb. 11, 1998.

Decided March 25, 1998.

Richard R. Sylvester, Los Angeles, CA,
pro se.

Stepen J. Snipper, Los Angeles, CA, for
Herbert Hafif.

Before JONES, PAPPAS [1], and MEYERS,
Bankruptcy Judges.

### OPINION

Jones, Bankruptcy Judge.

Appellant Richard R. Sylvester ("Debtor")
appeals from an order denying a claimed
exemption in the proceeds of a malpractice
action against Appellee. Debtor claims the
bankruptcy court erred in holding that the
malpractice action was an action to recover
property and not an action for personal inju-
ry. As an action to recover property, the
bankruptcy court held that any proceeds
from the malpractice action were not exempt
under California Code of Civil Procedure
("CCP") § 704.140. The Debtor timely ap-
pealed and we **REVERSE** and **REMAND.**

---

1. Hon. Jim D. Pappas, Chief Bankruptcy Judge   for the District of Idaho, sitting by designation.

## I. FACTS

In September of 1989 the Debtor engaged the Law Offices of Herbert Hafif ("Appellee") to represent him in an action against Northrop Corporation ("Northrop"). The Debtor's claims were included with those of other plaintiffs, all of whom engaged Appellee as counsel. The plaintiffs' claims arose under the False Claims Act and included "personal claims for harassment, retaliation, and wrongful discharge under the False Claims Act and California law" as well as claims for "emotional distress."

After some initial hearings, Northrop and the plaintiffs entered into a global settlement of the "Plaintiffs' Personal Claims." Under the terms of the settlement, the "Plaintiffs" included the Debtor and three other individuals. The "Plaintiffs' Personal Claims" were defined as "including, but not limited to, Plaintiffs' respective past, present or future claims for wrongful or constructive termination, harassment, retaliation, emotional distress and/or punitive damages, and any other claims arising from, during or in connection with, the employment with or separation from Northrop of any or all of the Plaintiffs."

Pursuant to the settlement, Northrop agreed to pay $825,000 in "full and complete settlement of the Plaintiffs' Personal Claims." The settlement agreement recited that "Northrop will pay this sum by way of a check made payable to The Law Offices of Herbert Hafif." Further, the settlement noted that "[i]t hereby expressly is understood and agreed that this sum shall include all attorney's fees, costs and expenses incurred in connection with the investigation and prosecution of Plaintiffs' Personal Claims."

On June 23, 1994, the Debtor signed the settlement agreement with Northrop. The settlement was also approved by each of the other plaintiffs. Thereafter, Northrop paid the $825,000 settlement amount and the Debtor received $86,159 as his portion of the settlement after attorneys' fees. The Debtor asserts that the remaining $723,841 was kept by Appellee.[2]

The Debtor claimed that he did not receive a personal copy of the settlement agreement until June 30, 1994, one week after he signed the settlement. On July 19, 1994, the Debtor attempted to rescind the settlement agreement based on fraud, undue influence, oppression and lack of informed consent. The Debtor claimed that Appellee failed to inform him of "significant terms" of the settlement agreement including the fact that all of Appellee's fees and costs would be paid out of the settlement.[3]

On February 10, 1995, the Debtor discharged Appellee as his counsel. On May 17, 1995, the Debtor and two of the other plaintiffs from the Northrop settlement filed a malpractice action against Appellee in California Superior Court. The Debtor alleged that Appellee misappropriated funds in breach of his fiduciary duty.

On October 4, 1996, the Debtor filed for chapter 7 protection. On his schedules the Debtor claimed his malpractice action against Appellee was exempt pursuant to CCP § 704.140 and valued the action at $738,841 (the difference between the $825,000 settlement and what the Debtor admits receiving). The Debtor claimed that any recovery should be exempt because "the funds to be recovered are proceeds from the $825,000 settlement for personal injury."

Appellee, as creditor in the Debtor's bankruptcy case, filed a motion for an order disallowing the Debtor's claim of exemption. The Appellee argued that the statutory exemption does not protect the proceeds of a malpractice action, only an action for personal injury. Alternatively, Appellee claimed that even if the proceeds from the malpractice claim were exempt, the proceeds were not necessary for the support of the debtor as required by CCP § 704.140(b).

---

**2.** The Debtor does not state how much money, if any, the other plaintiffs received.

**3.** The Debtor's claim of fraud, undue influence, oppression and lack of informed consent regarding the settlement agreement were rejected by the Ninth Circuit. *Sylvester v. Northrop Grumman Corp.*, Nos. 95–55220, 95–56068, 1996 WL 387621 (9th Cir. July 10, 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1253, 137 L.Ed.2d 333 (1997).

The Debtor opposed the motion, claiming that the settlement was really a settlement for personal injury and therefore any action to recover wrongly appropriated funds from a personal injury settlement is really a personal injury claim. The Debtor therefore claimed that CCP § 704.140 exempted any recovery on the malpractice action.

On January 28, 1997, the bankruptcy court ruled on the motion. The bankruptcy court noted that injury to property is defined in CCP § 28 as an injury which "consists in depriving its owner of the benefit of [the property], which is done by taking, withholding, deteriorating or destroying it." The bankruptcy court noted that the gravamen of the malpractice claim is withholding funds the Debtor claims are his. "In your malpractice action we look at what is the attorney alleged to have done wrong. What the attorney is alleged to have done wrong is not paid you funds.... So that's a property injury withholding funds." The bankruptcy court then sustained Appellee's objection to the Debtor's claimed exemption. The Debtor timely appealed.

On January 21, 1998, this Panel heard oral argument on this appeal. At oral argument the Debtor informed the Panel that on January 6, 1998, the jury in the state malpractice action had rendered a verdict in favor of the Debtor in the amount of $125,476. We granted the Debtor additional time to file supplemental excerpts of record in order to include the jury verdict.[4]

## II. ISSUES

Whether the bankruptcy court erred in ruling that the proceeds from the Debtor's malpractice action are not exempt pursuant to CCP § 704.140.

## III. STANDARD OF REVIEW

The bankruptcy court's application of California exemption law is a question of statutory construction which we review de novo. *In re Morgan,* 149 B.R. 147, 150 (9th Cir. BAP 1993).

**4.** We note that the Debtor attempts to make new arguments in his supplemental excerpts of record. However, as these arguments were not raised in the court below and because these

## IV. DISCUSSION

■ 11 U.S.C. § 522 provides that a debtor may claim exemptions for property exempt under either state or federal law. When a debtor elects to claim an exemption under state law pursuant to this section, the bankruptcy court looks only to state law to determine the scope of that exemption. *In re Golden,* 789 F.2d 698, 700 (9th Cir.1986).

■ In the present case, the Debtor seeks to exempt the proceeds of his malpractice claim pursuant to the personal injury exemption of CCP § 704.140. CCP § 704.140 reads in pertinent part: "(b) Except as provided in subdivisions (c) and (d), an award of damages or a settlement arising out of personal injury is exempt to the extent necessary for the support of the judgment debtor and the spouse and dependents of the judgment debtor." Cal.Civ.Proc.Code § 704.140 (West 1987). Thus, the Debtor must meet two criteria before an exemption pursuant to CCP § 704.140 may be taken. First, the funds sought to be exempted must arise as a result of "personal injury." Second, the funds are only exempt "to the extent necessary for the support" of the Debtor. We will address each of these requirements in turn.

1. *The bankruptcy court erred in holding that the malpractice action was merely an action to recover property and therefore not an action for personal injury pursuant to CCP § 704.140.*

There appears to be only one reported California case dealing with the exemption of a malpractice action pursuant to CCP § 704.140. In the case of *In re Haaland,* 172 B.R. 74 (S.D.Cal.1989), the debtor fell behind in his mortgage payments and the mortgage lender noticed a trustee's sale of the debtor's home. The debtor then filed for chapter 13 protection. Shortly thereafter the debtor's chapter 13 case was dismissed, thereby lifting the automatic stay. The debtor's attorney advised the debtor that the attorney

arguments exceed the scope of this Panel's leave to file supplemental excerpts of record, we refuse to consider these arguments.

would file a chapter 7 proceeding, but filing could wait until after the foreclosing creditor had renoticed the sale of the property. However, under California law, the creditor did not need to renotice the sale and the home was sold at auction. The debtor filed a malpractice action against his attorney alleging that the attorney's malpractice had resulted in the loss of nearly $40,000 equity in his home. The debtor claimed any recovery would be exempt under § 704.140 because the injury was personal in nature.

In *Haaland* the United States District Court for the Southern District of California noted that § 704.140 was enacted as part of a comprehensive revision of state law governing the enforcement of judgments. *Id.* at 77. The court noted that the California Law Revision Commission proposed § 704.140 because "existing law provided exemptions for insurance benefits for personal injury or death but did not exempt settlements or awards for the personal injury of a judgment debtor." *Id.*

The *Haaland* court continues:

Thus, the legislative history indicates that the intent behind this legislation was to afford the same exemption to personal injury claimants who obtain awards through litigation or settlement as those who claim an exemption for insurance benefits under former sections 690.9–690.11. The former sections allow exemption only for health, disability, or life insurance benefits received when the beneficiary is physically injured or dies. There is no indication that § 704.140, which directly tracks the preceding sections relating to health, disability, and life insurance and which was enacted in the precise form suggested by the Commission, was intended to be read more broadly than its predecessor sections in this regard.

*Id.* The *Haaland* court concluded that the "legislature contemplated bodily injury rather than other types of injury such as loss of property" and held that the Debtor's malpractice claim against his attorney alleging loss of the equity in the debtor's home could not be exempted as a "personal injury." *Id.*

In the present case the bankruptcy court read the *Haaland* decision as precluding an exemption in any malpractice action. However, a close reading of *Haaland* reveals that the District Court looked beyond the malpractice action itself in order to determine the character of the funds sought to be recovered. As the *Haaland* malpractice claim was spawned by the loss of equity in the debtor's home, the District Court properly concluded that the malpractice action was one to recover property.

■ However, in the present case the settlement agreement provided that the settlement was entered into in exchange for dismissing the Debtor's claims, which included a claim for "emotional distress." As the funds at issue in the malpractice action were spawned from the settlement agreement which included settlement for "emotional distress," a portion of the funds recovered in the malpractice action are properly attributable to the settlement of the Debtor's "personal injury" claim.

We do note, however, that the Debtor's claim that he is entitled to exempt the entire amount of the malpractice recovery omits the fact that the settlement funds at issue were not awarded simply on Debtor's claim of "emotional distress." The settlement agreement recounts Debtor's claims of "harassment," "retaliation," "wrongful discharge," and "constructive termination" as well as emotional distress. The settlement agreement notwithstanding, the Debtor contends that he alone is entitled to exempt the entire malpractice award as an award solely for emotional distress. This assertion is plainly contrary to the settlement agreement which spawned the funds at issue. Therefore, we reject the Debtor's argument that the entire settlement award was for personal injury.

Finally, we note that the Debtor argues that the Ninth Circuit has already determined that the settlement was entirely for "personal injury." The Debtor then claims that because the Ninth Circuit has already ruled on the question, the issue is res judicata. However, the Debtor's logic is dubious at best.

In his original complaint against Northrop the Debtor had raised a number of federal claims as a *qui tam* plaintiff under the False

Claims Act including wrongful or constructive termination, harassment, and retaliation. The Debtor also included state law claims for emotional distress and/or punitive damages. Pursuant to the settlement agreement the Debtor was required to dismiss all claims. The Debtor's attorney filed a motion to dismiss the case and the case was dismissed. Debtor then attempted to rescind the settlement agreement. The District Court and subsequently the Ninth Circuit refused to rescind the settlement agreement and revive the *qui tam* complaint. Without the *qui tam* claims, the District Court and the Ninth Circuit had no jurisdiction over the state law claims for emotional distress and/or punitive damages and properly refused to consider them.

The Debtor takes this history and concludes that because the original complaint included *qui tam* complaints as well as claims for emotional distress and/or punitive damages, and because the *qui tam* complaints were dismissed, the only remaining claims were for emotional distress and/or punitive damages. Therefore, the Debtor concludes, the entire settlement amount was for "personal injury."

However, the Debtor's reasoning ignores a few important points. First, the *qui tam* complaints were dismissed precisely because there was a settlement of those claims. The claims were not dismissed first and a settlement on the emotional distress and/or punitive damages claims reached later. Second, the Debtor attempts to persuade this Panel that because the Ninth Circuit refused to reinstate the *qui tam* claims, the Ninth Circuit implicitly held that the other claims were valid. This logic is untenable. The finding by the Ninth Circuit that the *qui tam* claims were properly dismissed does not mean that the Debtor's state law claims were valid. Therefore, the Debtor's attempt to claim that the Ninth Circuit has determined that the entire settlement was for personal injury is unavailing.

In any event, we hold that at least a portion of the Debtor's original claim and resulting settlement was for personal injury in the form of emotional distress. That portion of the settlement which is found to be payment for personal injury retained its character as funds paid for personal injury notwithstanding any misappropriation by the Appellee. As such, that portion of the Debtor's recovery against his attorney which is attributable to misappropriation of personal injury funds is exempt if the Debtor is able to demonstrate that it is necessary for his support. However, on the record before the Panel, we are unable to determine what portion of the settlement is properly attributable to personal injury, and therefore, we RE-VERSE and REMAND to the bankruptcy court for this determination.

2. *The bankruptcy court did not determine if the proceeds from the malpractice action which were properly traceable to the settlement for the Debtor's personal injury were necessary for the support of the Debtor.*

CCP § 704.140 requires that the Debtor also demonstrate that the personal injury recovery be "necessary for the support" of the Debtor. As the bankruptcy court found that the Debtor's action was one for the recovery of property rather than an action for personal injury, the bankruptcy court did not make a determination of whether the settlement proceeds were necessary for the support of the Debtor. This Panel is unable to render a decision on this point. Upon remand, if the bankruptcy court determines that the portion of the jury award properly attributable to personal injury is necessary for the support of the Debtor, the Debtor may claim that portion as exempt in his schedules. If the Debtor is unable to demonstrate that that portion of the recovery is necessary for his support, than the Debtor may not claim that portion of the recovery as exempt. However, this Panel expresses no opinion as to this question.

## V. CONCLUSION

The bankruptcy court erred in rejecting the Debtor's claimed exemption in his suit to recover funds allegedly misappropriated by his former attorney. The funds sought to be recovered were spawned from a settlement of certain claims, including the Debtor's claim for emotional distress. That portion of

the settlement which is properly attributable to the Debtor's claim of emotional distress is deemed a settlement for personal injury. Therefore, the Debtor's recovery in the malpractice action is likewise a recovery for personal injury in like proportion. As such, that amount of the Debtor's $125,476 which is properly attributable to misappropriated funds for personal injury is exempt if the Debtor can show they are necessary for his support. As the bankruptcy court made no findings in this regard we **REVERSE** and **REMAND** for a determination of these issues.